**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| GUILIO MESADIEU, | : | Civil Action No. 17-9014 (JMV/JBC) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| UNION COUNTY, *et al.*, | : | |
| Defendants. | : | |

**VAZQUEZ, District Judge:**

## I.   INTRODUCTION

Plaintiff Guilio Mesadieu, proceeding *pro se*, seeks to bring a federal civil rights complaint. (DE 1.)   At this time,[1] the Court must review Mr. Mesadieu's complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

For the reasons set forth below, the following claims may now proceed: (1) Mesadieu's 42 U.S.C. § 1983 excessive force claim against Officer Wilson; (2) his § 1983 civil conspiracy claim as against Wilson and Lieutenant Muir only; and (3) his state law claims against Wilson for assault, cruelty and unusual punishment, and intentional infliction of emotional distress ("IIED").   The following claims are dismissed with prejudice: (1) Mesadieu's § 1983 claims against Union

---

[1]   The Court previously granted Mr. Mesadieu leave to proceed *in forma pauperis* and ordered the Clerk of the Court to file his complaint.   (DE 2.)

County Jail ("UCJ"); and (2) his state law IIED claim as against Union County and UCJ. All other claims in Mesadieu's pleading are dismissed without prejudice.

## II.    BACKGROUND

Mr. Mesadieu's present civil action arises out of an incident that allegedly occurred during his confinement at Union County Jail.[2] His complaint formally identifies the following defendants: (1) Union County;[3] (2) UCJ; (3); Ronald L. Charles, UCJ's warden; (4) Captain Anthony Bonito; (5) Lieutenant Thomas Muir; (6) Officer Wilson; and (7) John Does 1-60. (DE 1 at PageID: 1-2.)

Mesadieu avers that on December 23, 2016,[4] "while sleeping in [his] assigned cell room

---

[2] The Court accepts the factual allegations in Mesadieu's complaint as true for purposes of conducting the required screening.

[3] Mesadieu's pleading also formally lists Union County Administration ("UCA") as a standalone defendant. (DE 1 at PageID: 6.) His pleading does not otherwise distinguish between UCA and Union County and it instead appears that these two entities are in fact one and the same. Mesadieu's sole allegation against UCA is that it "failed to adequately train and/or supervise [other] defendants[;]" that claim arises out of its "supervisory role over the Union County Jail[.]" (Id.) Mesadieu makes the same claim against Union County. (See id.) While Mesadieu's complaint thereafter repeatedly asserts that Union County, specifically, is liable to him under this theory, his pleading contains no further references to UCA, including in the "Causes of Action" section. (See id. at PageID: 14-22.) Based on these pleading considerations, the Court construes UCA and Union County as being one and the same entity, and thus, will terminate UCA as a party. Insomuch as it was Mesadieu's intention to pursue distinct relief from UCA and Union County, the Court would still dismiss UCA because Mesadieu's complaint fails to allege sufficient factual matter in support his failure to train claim as against that particular entity.

[4] Although Mesadieu expressly notes that he is presently incarcerated pursuant to a criminal conviction (see DE 1 at PageID: 3), his complaint fails to specify whether he was a convicted prisoner or a non-convicted pretrial detainee on December 23, 2016. Because he does, however, specifically allege that the defendants' alleged actions "constituted cruelty and unreasonable punishment in violation of the Eighth Amendment of the United States Constitution" (see id. at PageID: 19, 20), the Court will presume, for purposes of the present screening, that Mesadieu was a convicted prisoner on December 23rd. See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) ("pretrial detainees' [are protected] from 'punishment' under the Fourteenth Amendment, and convicted inmates [are protected] from punishment that is 'cruel and unusual' under the Eighth Amendment."). To the extent Mesadieu was instead a pretrial detainee on December 23rd, the Court would utilize substantially the same analysis to determine if any of Mesadieu's present §

in [UCJ,] he was "abruptly awaken[ed] by being kicked and stomped by [Officer Wilson]." (DE 1 at PageID: 9.) Officer Wilson thereafter exited Mesadieu's cell, only to return "moments later" to resume "the assault by pulling on [Mesadieu's] leg until [his] body was hanging mid-way off the bed [he] was laying on." (*Id.*) "[Wilson] once again exited [Mesadieu's] cell, then came back a third time . . . wearing gloves and proceeded to [strike Mesadieu] with punches causing bodily injury and attempted to pull [Mesadieu's] jail issued uniform off of [his] body exposing [his] bare rear end and lower back." (*Id.* at PageID: 10.) Officer Wilson's actions made Mesadieu "afraid for his life" and "wonder[ing] if he would die in the escalation of the attack." (*Id.*) Mesadieu "suffered from bruised ribs and severe pain in his right leg" as a result of Wilson's attack. (*Id.*)

"[Lieutenant Muir] and [unidentified] Union County Medical Staff . . . entered [Mesadieu's] cell [moments after Wilson's attack]." (*Id.*) At that time, Mesadieu informed Lieutenant Muir that he wanted to file a formal complaint against Officer Wilson and requested medical attention. (*Id.*) In response, Muir said "we're not beat"[5] and "then exited the room and closed the door[,]" thereby acting unconcerned and indifferent when Mesadieu reported Officer Wilson's alleged attack shortly after it happened. (*Id.*) Mesadieu's contemporaneous request for medical attention was also denied. (*Id.*)

After the alleged assault, Wilson, Muir and certain otherwise unidentified corrections

---

1983 claims should proceed past the current screening stage. In other words, this distinction does not materially affect the Court's present analysis. Mesadieu is, however, should clearly state whether he was a pretrial detainee or a convicted prisoner on December 23, 2016 in any amended pleading he chooses to submit; barring additional clarification, the Court will continue to presume Mesadieu was a convicted prisoner on that date.

[5] Mesadieu has not provided any additional context or information about the significance of this statement.

officers and UCJ medical staff "falsif[ied] medical records [and, further, that those individuals] knowingly and willfully spoliate[d] all records of the attack to cover [Wilson's] misconduct."   (*Id.* at PageID: 11.)   In addition, certain otherwise unspecified defendants assisted in this cover-up "by not documenting the assault in the county log book."   (*Id.* at PageID: 10.)   Those same unnamed defendants also moved Mesadieu to another cell "[t]o make sure the assault was . . . not reported on file."   (*Id.*)   Mesadieu further claims that "Union County medical staff [altered and fabricated] medical record and reports, as well as the dates of [Mesadieu's] medical appointments . . . in [UCJ's] system."   (*Id.*)   Defendants covered-up the December 23rd incident "despite the fact that video evidence of the assault exist[s.]"   (*Id.* at PageID: 14.)   Through these actions, "defendants have wrongfully and intentionally concealed information crucial to [Mesadieu's] ability to obtain relief through the courts."   (*Id.* at PageID: 13.)

Defendants' purported cover-up of the assault was done "in conjunction [with and] while operating with a 'code of silence' policy between all defendants."   (*Id.* at PageID: 11.)   Pursuant to this "code of silence" policy, "[UCJ] officers would not report [the] misconduct of other [UCJ] officers."   (DE 1 at PageID: 12.)   The code of silence has a "long history of being practiced within the Union County Administration and/or [UCJ]."   (*Id.*)   This policy "allow[s] the[] officers [of UCJ] to falsify, spoliate records, and cover[]-up their misconduct" and to act "without fear of reprimand, discipline, or termination[.]"   (*Id.* at PageID: 16, 17.)

Mesadieu claims, in sweeping fashion, that "Officer Wilson and all the defendants named [in his complaint] did commit and/or [were] aware of a brutal assault against [him] . . . and all defendants [instead] chose to abide by [this] 'code of silence' policy."   (*Id.* at PageID: 11.) Mesadieu likewise claims that defendants "failed to take the necessary steps to break the 'code of silence' policy."   (*Id.*)   Mesadieu specifically claims that defendants Union County, UCJ,

Warden Charles, Captain Bonito, and Lieutenant Muir – who each "have a duty to supervise the staff members of [UCJ]" to "ensure that [they] are operating within the rules and regulations to maintain order and structure in a case of safety and security" (*Id.* at PageID: 14) – "permitted, encouraged, tolerated, and knowingly acquiesced" to this policy. (*Id.* at PageID: 15.) He alleges that each of these defendants "failed to take proper actions to protect and/or preserve the safety of inmates of [UCJ.]" (*Id.*) Mesadieu relatedly claims that "defendants have a well settled and permanent policy of allowing [UCJ] officers and staff members, including Officer Wilson, to attack and assault inmates willfully, creating an atmosphere of illegal and unconstitutional behavior in reckless disregard of [UCJ inmates'] welfare and safety[.]" (*Id.*)

## III. STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x. 159,

162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).   That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit.

To survive the Court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible.   *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).   "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   A complaint may also be dismissed for failure to state a claim if it appears "'that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Haines v. Kerner*, 404 U.S. 519, 521 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981). *Pro se* pleadings are liberally construed.   *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."   *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).).

## IV.   ANALYSIS

### a.   42 U.S.C. § 1983

Mesadieu avers that all of the defendants identified in his complaint, *i.e.*, Union County, UCJ, Warden Charles, Captain Bonito, Lieutenant Muir, Officer Wilson, and John Does 1-60, are liable under § 1983.   A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights by a state official or employee.   Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To obtain relief under this statute, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights).

### b. UCJ is not a "person" subject to § 1983 liability

Initially, the Court notes that Union County Jail itself is not a "person" subject to suit under 42 U.S.C. § 1983. *See Parrish v. Ocean Cnty. Jail*, No. 13-2020, 2013 WL 5554687, at *2 (D.N.J. Sept. 20, 2013) (holding that Ocean County Jail is not a person subject to suit under 42 U.S.C. § 1983) (citations omitted); *accord Ross v. Burlington Cty. Jail*, No. 12-338, 2013 WL 3514191, at *2 (D.N.J. July 11, 2013) (citations omitted); *Ruiz v. Stills*, No. 09-4259, 2012 WL 762166, at *4 (D.N.J. Mar. 7, 2012) (citations omitted). Thus, irrespective of the merits of Mesadieu's § 1983 claims against any of the other defendants, he, cannot, as a matter of law, obtain relief from UCJ under § 1983. Mr. Mesadieu's § 1983 claims against Union County Jail will therefore be dismissed with prejudice.

### c. Mesadieu fails to allege a cognizable § 1983 denial of medical care claim

Mesadieu claims that UCJ medical staff improperly refused his request to treat his bruised ribs and his subjective complaint of severe pain in his right leg shortly after Officer Wilson allegedly assaulted him on December 23, 2016. (DE 1 at PageID: 10.) Mesadieu asserts that this "denial of medical care [to him] . . . constituted cruelty and unusual punishment in violation of the Eighth Amendment[.]" (*Id.* at PageID: 19.) The factual allegations underlaying that legal conclusion, however, fail to give rise to a viable § 1983 claim.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment only when they act with "deliberate indifference to a prisoner's *serious* illness or injury[.]" *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (emphasis added). Mr. Mesadieu's § 1983 deliberate indifference claim to medical needs claim can proceed only if the allegations in his complaint plausibly suggest: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to that serious medical need. *Id.*; *accord Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). Medical needs that are sufficiently "serious" under this standard include "one[s] . . . diagnosed by a physician as requiring treatment or one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 139 (3d Cir. 2016) (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

Here, Mesadieu alleges that unnamed UCJ medical staff denied his request for medical attention for his "bruised ribs and severe pain in [his] right leg." (DE 1 at PageID: 10.) These injuries, however, are not sufficiently "serious" for purposes of establishing a § 1983 deliberate indifference to medical needs claim. *See Jones v. Furman*, No. 02-CV-939F, 2007 WL 894218, at *10 (W.D.N.Y. Mar. 21, 2007) (holding that plaintiff's injuries of "soreness, pain in and a lump

behind his right ear, lump on the back of his head, small abrasions on his nose and knuckle, and bruising to his back, ribs and legs" were not "serious medical condition[s]" for purposes of "establish[ing] an Eight Amendment deliberate indifference claim."); *Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 268 (N.D.N.Y. 2008) ("Plaintiff's allegation of a bruised rib does not satisfy the requirement of a sufficiently serious deprivation."); *Ford v. Davis*, 878 F. Supp. 1124, 1130 (N.D. Ill. 1995) (bruised ribs and a bruised back were not "serious wounds" that required immediate medical treatment). The Court will accordingly dismiss Mesadieu's § 1983 deliberate indifference to medical needs claim in their entirety without prejudice.

### d. Mesadieu's § 1983 excessive force claim against Wilson may proceed

Mesadieu claims that Officer Wilson committed an unprovoked assault on him while he was sleeping in his cell on December 23, 2016. (DE 1 at PageID: 10.) He asserts that in the course of this attack, Wilson punched Mesadieu and attempted to pull him off his bed, and that she bruised his ribs and caused him to suffer "severe pain in [his] right leg." (*Id.*) Mesadieu alleges that Wilson's attack "constituted cruelty and unusual punishment in violation of the Eighth Amendment[.]" (*Id.* at PageID: 18-19.) These factual allegations are sufficient for Mesadieu's § 1983 excessive force claim against Wilson to proceed past screening.

Where "prison officials stand accused of using excessive physical force in violation of the [Eight Amendment's] Cruel and Unusual Punishments Clause,[6] the core judicial inquiry is that set

---

[6] As noted above, the Court assumes, for purposes of this Opinion, that Mesadieu was a convicted prisoner on December 23, 2016. Based on that assumption, Mesadieu's § 1983 excessive force claim is rooted in the Eighth Amendment. Insomuch as Mesadieu was, in the alternative, a non-convicted pretrial detainee on December 23rd, this claim would instead arise under the Fourteenth Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *accord Graham v. Conor*, 490 U.S. 386, 395 n.10 (1989) (the "Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment."). Regardless of Mesadieu's incarceration status on December 23, 2016, his complaint ultimately contains sufficient factual matter for his § 1983 excessive force claim against

out in *Whitley v. Albers*, 475 U.S. 312 (1986): whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (brackets in original omitted). The factual allegations in Mesadieu's complaint plausibly suggest that Wilson's attack on December 23, 2016 – which Mesadieu claims was entirely unprovoked – was done maliciously and sadistically. Conversely, there are no facts alleged in his pleading which indicate that Wilson's December 23rd use of force against him was applied in a good-faith effort to maintain or restore discipline. The Court will therefore proceed Mesadieu's § 1983 excessive force claim against Wilson.

  **e. Mesadieu's related state law claims against Wilson for cruel and unusual punishment, assault, and intentional infliction of emotional distress ("IIED") may also proceed; his IIED claim is dismissed as to all other defendants**

  In addition to his § 1983 excessive force claim, Mesadieu's complaint contains three state law claims against Wilson stemming from the alleged attack: (1) cruelty and unusual punishment; (2) assault; and (3) intentional infliction of emotional distress. (DE 1 at PageID: 21-22.) As a threshold matter, the Court notes that it could potentially dismiss all state tort claims because Mesadieu did not allege in his complaint that he filed the requisite notice pursuant to the New Jersey Tort Claims Act. *See Ingram v. Twp. of Deptford*, 858 F. Supp. 2d 386, 400 (D.N.J. 2012) ("The Plaintiff's complaint does not allege that she filed notice in accordance with the statute. Therefore, the Plaintiff's complaint fails to state a claim for negligence and assault and battery and must be dismissed."). However, because the Court is at the screening stage, it will not dismiss

_____

Wilson to proceed.

  The Court also notes that while is conducting an Eighth Amendment analysis, it does because the Eighth Amendment has been incorporated to the State's through the Fourteenth Amendment. However, as noted, if Mesadieu were a pre-trial detainee, the analysis would be limited to the Due Process Clause of the Fourteenth Amendment.

the complaint on these grounds at this time. Yet, this ruling does not preclude any Defendant from filing a motion to dismiss on such grounds.

Mesadieu's cruelty and unusual punishment claim – which he has asserted against Wilson only – is based solely on Wilson's purported use of constitutionally-violative excessive force against him on December 23, 2016; his right to be free from use of such force is secured by both the state and federal constitutions. *See* U.S. Const. amend. VII; *id.* at amend. XIV, § 1; N.J. Const. art. I, ¶ 1. The Court accordingly construes this cause of action as a state law civil rights claim arising under Section 1983's state law counterpart, the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2(c).[7] *See Slinger v. New Jersey*, No. 07-5561, 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), *rev'd on other grounds*, 366 F. App'x 357 (3d Cir. 2010) ("[NJCRA] was intended to serve as an analog to 42 U.S.C. § 1983; it was designed to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence."). The Court has already determined that Mesadieu has asserted a § 1983 excessive force claim against Wilson that can proceed passed screening. As a result, Mesadieu's parallel state law civil rights claim against that defendant may also proceed. *See Bayette v. Ricci*, 489 F. App'x 540, 543 n.2 (3d Cir. 2012) (utilizing same analysis for plaintiff's state and federal civil rights claims "because the test for cruel and unusual punishment under the New Jersey state Constitution 'is generally the same as that applied under the federal Constitution.'") (citation omitted); *see also Chapman v. N.J.*, No. 08-4130 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983.") (citing *Newport v. Fact Concerts*, 453 U.S. 247, 259-261, (1981); *Allen v. Fauver*, 167 N.J. 69, 74 (N.J. 2001)).

---

[7] The Court does so notwithstanding that Mesadieu specifically characterizes this claim as "the tort of cruelty and unusual punishment under the law of New Jersey." (DE 1 at PageID: 22.)

Mesadieu's state law tort claims against Wilson for assault and for intentional infliction of emotional distress will also be permitted to proceed past screening. Under New Jersey law:

> [a] person may be liable for battery if 'he acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such contact' and a 'harmful' or 'offensive' contact 'directly or indirectly results.' Restatement (Second) of Torts §§ 13, 18 (1965). A person who acts with the same intent may be liable for assault even if no contact actually results if the victim is placed in "imminent apprehension" of a harmful or offensive contact. *Id.* at § 21.

*Giovine v. Giovine*, 284 N.J. Super. 3, 33, 663 A.2d 109, 125 (App. Div. 1995) (Skillman, J., concurring and dissenting); *accord Russo v. Ryerson*, No. 01-4458, 2006 WL 477006, at *36 (D.N.J. Feb. 28, 2006); *see also Caldwell v. KFC Corp.*, 958 F. Supp. 962, 970 (D.N.J. 1997). In his complaint, Mesadieu specifically alleges that Wilson committed an unprovoked attack against Mesadieu which bruised his ribs and caused severe leg pain. Mesadieu further alleges that he feared for his life. Mesadieu's pleading accordingly contains sufficient factual matter for his state law assault claim – which has been asserted against Wilson only – to proceed further; this remains the case regardless of whether Mesadieu's claim is, as his pleading indicates, one for assault only, or, as it appears based on the facts alleged in support of that claim, one for assault *and* battery.

Whether these factual allegations permit the Court to proceed Mesadieu's IIED claim against Wilson is a closer call. Under New Jersey law, this tort requires "extreme and outrageous conduct [that] intentionally or recklessly causes severe emotional distress to another." Restatement (Second) of Torts § 46(1) (1965). Here, even assuming that the specific factual allegations in Mesadieu's complaint pertaining to Wilson's wrongdoing and the resulting fear he felt are true, the sufficiency of such allegations is arguably questionable. Indeed, "the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991). That said, "[t]he intentional

infliction of emotional distress tort is fact-intensive, and discovery in this case will proceed regardless of the disposition of this claim." *Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 428 (D.N.J. 1994). Thus, while the Court is somewhat skeptical of Mesadieu's ability to ultimately prevail on his IIED claim against Wilson, it will permit that claim to proceed past screening in light of his other well-pleaded factual allegations against that defendant.

The Court will not, however, proceed Mesadieu's IIED claim as against any other defendant. The Court dismisses this claim with prejudice as against Union County and UCJ because, in accordance with well-settled New Jersey jurisprudence, "there can be no vicarious liability by a public entity for intentional torts committed by its employees[.]" *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007) (citation omitted); *Biaggi-Pacheco v. City of Plainfield*, No. 16-cv3511, 2017 WL 4618751, at *5 (D.N.J. Oct. 13, 2017) (same); *see also Ward v. Barnes*, 545 F. Supp. 2d 400, 420-21 (D.N.J. 2008) ("there is no legal basis for permitting *respondeat superior* liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require 'actual malicious or willful misconduct.'").

The Court dismisses Mesadieu's IIED claim against Bonito, Charles, and Muir because his complaint does not contain any specific factual allegations which indicate that these individuals engaged in the type of extreme and outrageous conduct that the tort of IIED requires. His pleading is likewise bereft of any allegation that would allow the Court to infer that these defendants ever acted in a manner capable of causing Mesadieu to experience severe emotional distress. Indeed, Mesadieu indicates he feared for his life only when Wilson – and Wilson alone – was physically attacking him. Dismissal of Mesadieu's state law IIED claim against Bonito, Charles, and Muir is dismissed without prejudice.

### f. Mesadieu's § 1983 conspiracy claim may proceed against Wilson and Muir

Mesadieu claims that multiple defendants took concerted actions to cover-up Wilson's December 23rd assault. Mesadieu specifically alleges that "moments after" he was assaulted by Wilson, Lieutenant Muir and otherwise unidentified UCJ medical staff entered his cell. (DE 1 at PageID: 10.) He further avers that Lieutenant Muir ignored his request to file a formal complaint against Wilson and otherwise acted with indifference to the incident. (*Id.*) Mesadieu expressly claims that Muir, Wilson, and other unnamed UCJ corrections officers intentionally refused to document the assault in the county log book and moved Mesadieu to another cell to make sure the assault was not reported. (*Id.*) He also specifically alleges that unidentified UCJ medical staff altered and fabricated his medical records in furtherance of this cover-up. (*Id.*) Mesadieu further avers that these actions were undertaken "in conjunction [with and] while operating with a 'code of silence' policy" in which "[UCJ] officers would not report [the] misconduct of other [UCJ] officers." (*Id.* at PageID: 11, 12.) Mesadieu asserts that as a result of the foregoing actions, "defendants have wrongfully and intentionally concealed information crucial to [Mesadieu's] ability to obtain relief through the courts." (*Id.* at PageID: 13.)

The foregoing factual allegations support a viable § 1983 conspiracy claim.[8] The Third Circuit – in its 2018 precedential decision, *Jutrowski v. Township of Riverdale*, 904 F.3d 280 (3d

---

[8] "The [specific] elements of a claim of conspiracy to violate federal civil rights are as follows:

> (1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law."

*Jutrowski*, 904 F.3d at 294 n.15 (citing *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)) (internal quotations and bracketing omitted).

Cir. 2018) – recently outlined the contours of such a claim:

> To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 [] (1970). Such rights include, of course, those protected by the Due Process Clause of the Fourteenth Amendment, such as the "right to be heard in an impartial forum," *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 161 (3d Cir. 2010), and the "right of access to the courts," *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). Those rights "assure[] that no person will be denied the opportunity to present to the judiciary allegations concerning violations of . . . constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579 [] (1974).
>
> . . . [D]eprivations of the right of access to the courts arise most often in the prison context, *see, e.g.*, *Peterkin v. Jeffes*, 855 F.2d 1021, 1036 (3d Cir. 1988)[;] this right is . . . denied when [prison officials,] conspire to cover up constitutional violations, *see, e.g.*, *Colbert[ v. City of Chicago*, 851 F.3d 649, 657-58 (7th Cir. 2017)] (holding that the plaintiff could allege under § 1983 that "the named officers participated in something akin to a 'conspiracy of silence among the officers' in which defendants refuse to disclose which of their number has injured the plaintiff"). A "conspiracy of silence" among [prison officials] is actionable as a § 1983 conspiracy because the coordinated officer conduct "impede[s] an individual's access to courts" and renders "hollow" a victim's right to redress in a court of law. *Vasquez v. Hernandez*, 60 F.3d 325, 328-29 (7th Cir. 1995) ("[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged."); *see also Swiggett v. Upper Merion Twp.*, No. 08-2604, 2008 WL 4916039, at *4 (E.D. Pa. Nov. 17, 2008) ("[C]ourts have found that concealing a constitutional violation, including use of excessive force, does not amount to a separate constitutional violation unless the victim of the concealment was deprived of his right of access to the courts.").[9]
>
> After a plaintiff establishes that the object of the conspiracy was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence

---

[9] "The right of access to the courts is sourced from both 'the First and Fourteenth Amendments,' *Monroe*, 536 F.3d at 205, and is typically framed as a due process right in the inmate context[.]" *Jutrowski*, 904 F.3d at 294 n.17.

of the elements of a conspiracy: agreement and concerted action."
*Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir.
2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir.
1990)). To show agreement, he must demonstrate that "the state
actors named as defendants in the[] complaint somehow reached an
understanding to deny [the plaintiff] his rights," *Kost v.
Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993) . . . .

*Jutrowski*, 904 F.3d at 293-95.

In this case, Mesadieu claims that UCJ officials engaged in an after-the-fact conspiracy to conceal Wilson's December 23rd assault and that this cover-up has deprived him of his right of access to the courts. While Mesadieu claims that "all the defendants named [in his complaint] did commit and/or [were] aware of a brutal assault against [him] . . . and all defendants chose to abide by [the] 'code of silence' policy" (*see* DE 1 at PageID: 11), the particular facts alleged in his complaint fail to credibly support this broad, generalized allegation. Mesadieu's complaint does, however, contain sufficient specific factual allegations which plausibly suggest that named defendants Wilson – as the perpetrator of the alleged attack – and Muir – who was allegedly present in the cell moments after Wilson's assault – were aware of the December 23, 2016 incident and were directly involved in the deliberate concealment of Wilson's assault after it occurred. Mesadieu's § 1983 conspiracy claim against those two named defendants will therefore be allowed to proceed; Mesadieu's § 1983 conspiracy claim against the other unnamed UCJ correctional officers and medical personnel who allegedly came to his cell shortly after Wilson's assault also appear to be viable, and the Court may authorize those claims to proceed further after Mesadieu specifically identifies those individuals.[10] *See Jutrowski*, 904 F.3d at 296 ("[W]here a plaintiff

---

[10] The Court anticipates that Mesadieu's identification of said individuals will be made via his filing of an amended complaint. In that regard, Mesadieu is advised that he would be well-served to provide as much specific information about any such newly-identified defendants' particular role and actions in the alleged cover-up in any amended pleading he submits.

adduces sufficient evidence of an after-the-fact conspiracy to cover up misconduct, even of an unidentified officer, he may be able to state a claim under § 1983 for the violation of . . . the due process right of access to the courts.").

Conversely, Mesadieu's complaint does not contain any specific factual allegations which plausibly demonstrate that Warden Charles or Captain Bonito had any direct, personal involvement in the alleged cover-up. "[T]o prevail in a civil rights action, a plaintiff must demonstrate that the defendant was personally involved in the alleged wrongful conduct; liability cannot be predicated solely on the operation of *respondeat superior*." *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 680 (E.D. Pa. 2018); *see also Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990) ("Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983."). Personal involvement can be shown through allegations, made with "appropriate particularity," of personal direction or of actual knowledge and acquiescence. *Kornegey*, 299 F. Supp. 3d at 680 and at 680 n.17 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Mesadieu's blanket assertion that Charles and Bonito – and all other defendants – were aware of the December 23rd attack and allowed it to be concealed lacks the necessary particularity for this claim to proceed further. His § 1983 conspiracy claim is therefore dismissed against those defendants without prejudice.

### g. Mesadieu's § 1983 supervisory liability-based claims will be dismissed against all defendants

Mesadieu also asserts § 1983 claims against Union County, Warden Charles, Captain Bonito, and Lieutenant Muir in their roles as UCJ supervisors.[11] He alleges, in sweeping fashion, that these defendants – who each "have a duty to supervise the staff members of [UCJ]" to "ensure

---

[11] Mesadieu has also asserted this claim against UCJ. As noted above, however, UCJ is a not a "person" subject to § 1983 liability.

that [they] are operating within [UCJ's] rules and regulations to maintain order and structure in a case of safety and security" (DE 1 at PageID: 14) – "permitted, encouraged, tolerated, and knowingly acquiesced" to UCJ's code of silence.  (*Id.* at PageID: 15.)  He generally claims that each of these defendants "failed to take proper actions to protect and/or preserve the safety of inmates of [UCJ]" and "failed to take the necessary steps to break the 'code of silence' policy." (*Id.* at PageID: 11, 15.)  Mesadieu relatedly argues that "defendants have a well settled and permanent policy of allowing [UCJ] officers and staff members, including Officer Wilson, to attack and assault inmates willfully, creating an atmosphere of illegal and unconstitutional behavior in reckless disregard of [UCJ inmates'] welfare and safety[.]"  (*Id.* at PageID: 15.)  For the reasons detailed below, all of Mesadieu's § 1983 supervisory liability-related claims will be dismissed.

### 1) Mesadieu fails to state a viable § 1983 claim against Union County

Mesadieu's § 1983 claims against Union County arise under two distinct, albeit closely-related, legal theories of municipal liability: (1) that Union County is the driving force behind the policies and customs[12] at UCJ – including the "code of silence" – that enabled Wilson to attack him without fear of retribution; and (2) that the county failed to properly train and supervise its employees (his "*Monell* claims").

Union County "may not be held liable for constitutional torts under § 1983 on a vicarious liability theory rooted in *respondeat superior*.  *Andrews v. City of Philadelphia*, 895 F.2d 1469,

---

[12] Policy is made when a decisionmaker, *i.e.*, one who has final authority to establish the relevant municipal policy, issues an official proclamation, policy, or edict; a course of conduct is considered to be a custom when, although not authorized by law, its practice by state officials is so permanent and well-settled as to virtually constitute law.  *Andrews*, 895 F.2d at 1480.  An unofficial custom" may also be established by evidence of knowledge and acquiescence."  *Beck*, 89 F.3d at 971

1480 (3d Cir. 1990). Instead, Union County's liability under § 1983 is limited "to only those constitutional torts actually caused by the municipality." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996). Accordingly, this municipal defendant may be subject to § 1983 liability "when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by [Union County] or informally adopted by custom." *Id.* at 971 (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). Stated more simply, Union County can be "held responsible as an entity [under § 1983] when the injury inflicted is permitted under its adopted policy or custom." *Id.* Ultimately, for Mesadieu to prevail on this *Monell* claim, he "must show that [he was] deprived of rights, privileges, or immunities secured by the Constitution and laws, and that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237-38 (3d Cir. 2013) (citations and internal quotations omitted).

Importantly, Union County "may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (citing *Monell*, 436 U.S. at 691). This portion of his *Monell* claim may proceed only if his complaint contains factual allegations which plausibly suggest that (1) Union County adopted an official policy or unofficial custom that deprived Mesadieu of his constitutional rights; (2) Union County acted deliberately and was the moving force behind the deprivation; and (3) Mesadieu's injuries were caused by the identified policy or custom. *Monell*, 436 U.S. at 692-94.

Mesadieu's § 1983 failure to train claim against Union County is subject to similar scrutiny. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Bd. of Cty.*

*Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997) ("rigorous standards of culpability and causation must be applied to [failure to train claims to] ensure that the municipality is not held liable solely for the actions of its employee."). This claim is subject to a "stringent" standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S. at 410; *accord Doe v. Luzerne County*, 660 F.3d 169, 179 (3d Cir. 2011) ("a municipality can only be liable under § 1983 where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality.") (citations omitted).

Such a claim therefore normally requires a "pattern of similar constitutional violations by untrained employees." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citation omitted). "To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that '(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Doe*, 660 F.3d at 179-80 (citing *Carter v. City of Philadelphia,* 181 F.3d 339, 357 (3d Cir. 1999). Moreover, "the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 325 (3d Cir. 2005) (internal quotations and citations omitted).

Mesadieu's *Monell* claims are reviewed in light of the foregoing principles. Again, Mesadieu's pleading contains only the conclusory, oft-repeated assertion that Union County is responsible for perpetuating a culture at UCJ – including a code of silence – that enabled Wilson to attack him on December 23, 2016 without fear of retribution. His complaint lacks any particularized factual allegations which plausibly suggest that the unconstitutional acts allegedly committed by Wilson and Muir, among others, are attributable to an official policy or an unofficial

custom promogulated by Union County, specifically. *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015) ("[C]onclusory statements, without more, fail to adequately allege that [a municipality] adopted a policy, custom, or practice that resulted in a violation of [plaintiff's] rights."). Mesadieu's pleading is likewise bereft of specific facts demonstrating that Wilson's December 23rd attack on Mesadieu was the result of Union County's failure to train and/or educate UCJ personnel. *Tarbox v. Butler Township*, No. 14–1346, 2015 WL 6157173, at *10 (M.D. Pa. Oct. 19, 2015) (conclusory allegations regarding township's failure to train and/or educate police officers are insufficient to invoke *Monell* liability). In short, there are no factual allegations in Mesadieu's pleading which plausibly suggest that an official policy of Union County – related to employee training or otherwise – or an unofficial, Union County-specific custom was the "moving force" behind the alleged constitutional violations committed by UCJ personnel.

Furthermore, Mesadieu fails to allege facts that sufficiently suggest that Union County implemented any such policy or custom with constitutionally actionable deliberate indifference. Mesadieu's pleading, among other things, fails to describe or detail any incidents in which other UCJ inmates were subject to the same treatment he endured and likewise fails to describe when and how, if at all, any such incidents were reported to Union County. His blanket reference to "a number of complaints" (*see* DE 1 at PageID: 13) about other incidents of misconduct is "not sufficient to create a pattern of violations[.]" *Buoniconti*, 148 F. Supp. 3d at 443 (citing *Thomas*, 749 F.3d at 225). The Court will accordingly dismiss Mesadieu's *Monell* claims against Union County for failure to state a claim; said dismissal is without prejudice.

### 2) Mesadieu fails to state a viable § 1983 supervisory liability claim against the individual named defendants

Mesadieu has also asserted § 1983 claims against Captain Bonito, Warden Charles, and Lieutenant Muir in their roles as UCJ supervisors. There are two avenues under which these

defendants may be subject to § 1983 supervisory liability:

> First, like municipalities, "[i]ndividuals who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."

*Cannon v. City and County of Philadelphia*, No. 14-5388, 2014 WL 7399037, at *3 (E.D. Pa. Dec. 30, 2014) (internal citations omitted).   The elements for supervisory liability are "met where the supervisor 'failed to respond appropriately in the face of an awareness of a pattern of such injuries' or where 'the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support' a finding of deliberate indifference."  *Parkell v. Markell*, 622 F. App'x 136, 140 (3d Cir. 2015) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989)).

Mesaidieu fails to state a cognizable § 1983 supervisory liability claim against Captain Bonito, Warden Charles, and Lieutenant Muir.[13]   First, he has not alleged facts which plausibly suggest that these specific defendants (or any defendant), with deliberate indifference, established and maintained any policy or custom that directly caused a constitutional harm.  *See Cannon*, 2014 WL 7399037, at *3.   Second, Mesadieu has not alleged facts that allow the Court to plausibly infer that Charles or Bonito participated in a violation of his rights, directed others to

---

[13]  As noted above, Mesadieu has pled sufficient facts of Muir's direct participation in the concealment of Wilson's assault to allow his § 1983 conspiracy claim against that defendant to proceed.   Insomuch as Mesadieu is also attempting to pursue an additional avenue of § 1983 liability against Muir as the individual supervisor who maintained the policies, practices, and customs at issue, the Court will dismiss that claim for substantially the same reasons it dismisses the § 1983 supervisory claims against Charles and Bonito, *i.e.*, it lacks facial plausibility.

violate them, or acquiesced to a violation. *See id.* Moreover, there are no well-pleaded factual allegations to support an inference that these defendants "failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Parkell*, 622 F. App'x at 140, 2015 WL 4523521, at *3. Again, Mesadieu's conclusory reference to "a number of [prior] complaints" (*see* DE 1 at PageID: 13), without more, does not establish a pattern.

In sum, because Mesadieu's complaint contains "no specific factual allegations fleshing out the claims of supervisory liability," *Wood v. Williams*, 568 F. App'x 100, 107 (3d Cir. 2014), the Court will dismiss his § 1983 supervisory-related claims against Charles, Bonito, and Muir. *See also Cannon*, 2014 WL 7399037, at *5 (allegations that "the supervisors approved of or failed to stop what the supervisees actually did" are "mere restatements of the element of supervisory liability claims"); *Santiago v. Warminster Tp.*, 629 F.3d 121, 131 (3d. Cir. 2010) (same).

### h. Mesadieu's state law negligence claim is dismissed as against all defendants

Mesadieu's claim of negligence against Charles, Bonito, Muir, UCJ, and Union County – which is based on his conclusory assertion that they failed "to adequately train and/or supervise their subordinates" (*see* DE 1 at PageID: 22) – is dismissed because his complaint contains no particularized factual content which plausibly suggests that these defendants' otherwise unspecified failures to train and/or supervise UCJ personnel were the proximate cause of Mesadieu's injuries. *See Stroby v. Egg Harbor Twp.*, 754 F. Supp. 2d 716, 721 (D.N.J. 2010) ("in order to establish a *prima facie* claim for negligent training, plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) defendant breached that duty of care, (3) defendant's breach was the proximate cause of plaintiff's injury, and (4) defendant's breach caused actual damages to plaintiff.") (citing *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987)); *accord Sullivan v. Marina Dist. Dev. Co., LLC*, No. 10-4204, 2012 WL 993417, at *4 (D.N.J. Mar. 23,

2012) ("Without evidence in the record substantiating the claim that Defendant improperly trained or failed to train its employees and that [this] failure to train properly was a substantial factor causing Plaintiff's injuries, Plaintiff has failed to state a claim for negligent training.").

### i. Mesadieu's additional civil conspiracy claims arising under 42 U.S.C. §§ 1985(3) and 1986 are dismissed

In addition to seeking relief under § 1983, Mesadieu also seeks relief against defendants under two related civil conspiracy statutes, 42 U.S.C. §§ 1985(3) and 1986. (DE 1 at PageID: 20-21.) 42 U.S.C. § 1985(3)[14] permits a party to bring an action to recover for injuries incurred by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Id.* To establish a claim for civil conspiracy under 42 U.S.C. § 1985(3), a plaintiff must allege the following:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citations omitted). Importantly, for Mesaidieu's § 1985(3) claim to proceed further, "there must be some racial, or perhaps otherwise

---

[14] 42 U.S.C. § 1985(3) specifically provides that:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all."  *Griffin v. Breckenridge*, 403 U.S. 88, 102, (1971).

42 U.S.C. § 1986[15] "constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985[.]'"  *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Township*, 616 F.2d 680, 696 (3d Cir. 1980), *cert. denied*, 450 U.S. 1029 (1981)).  In other words, "to maintain a cause of action under § 1986, [a plaintiff] must [first] show the existence of a § 1985 conspiracy."[16]  *Clark*, 20 F.3d at 1296 n.5.

Here, Mesadieu has not alleged that defendants' purported conspiracy was motivated by racial or class based discriminatory animus.  As such, Mesadieu's complaint fails to state a *prima facie* claim under § 1985(3).  *Kornegey*, 299 F. Supp. 3d at 685 (plaintiff failed to state a § 1985 claim where his pleading failed to allege that defendant "engaged in any conduct evidencing animus or discrimination based on race or ethnicity, or of disparate treatment based on these classifications."); *see also Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("[w]ith near

---

[15]  42 U.S.C. § 1986 specifically provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case[.]

[16]  In addition, a § 1986 plaintiff must demonstrate that: "(1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed."  *Clark*, 20 F.3d at 1295-96 (citations omitted).

unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights under § 1985(3)"). Mesadieu has therefore also failed to state a *prima facie* § 1986 claim. *Clark*, 20 F.3d at 1295. The Court will therefore dismiss Mesadieu's §§ 1985(3) and 1986 civil conspiracy claims without prejudice.

## V. CONCLUSION

For the reasons set forth herein, Mesadieu's § 1983 excessive force claim against Wilson and his § 1983 civil conspiracy claim as against Wilson and Lieutenant Muir may proceed. His state law claims against Wilson for assault, cruelty and unusual punishment, and intentional infliction of emotional distress may also proceed. Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court dismisses Mesadieu's § 1983 claims against Union County Jail ("UCJ"); and his state law IIED claim as against Union County and UCJ with prejudice. This means that Mesadieu cannot brings those claims again. All other claims in Mesadieu's pleading are dismissed without prejudice as against all other named defendants. Mesadieu is provided forty-five (45) days to file an amended complaint as to those claims dismissed without prejudice.[17] If he fails to do so, then those claims will also be dismissed with prejudice. An appropriate Order accompanies this Opinion.

Date: May 6, 2019                    s/ John Michael Vazquez
At Newark, New Jersey              JOHN MICHAEL VAZQUEZ
                                   United States District Judge

---

[17]  Mesadieu should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Wright & Miller, *supra*, at § 1476.